BOGARDUS v. GRACE et al.

(Circuit Court, S. D. New York. February 22, 1897.)

CONTRACTS—RESCISSION—SALE OF CLAIM AGAINST GOVERNMENT.

Plaintiff had an undisputed claim of $96,030 against the government of Peru, which he assigned for collection to defendants, who had accounts with that government. The claim was acknowledged by Peru as due to defendants, and was then charged to that government on defendants' books, which showed at the time a balance due to it from defendants of $46,557.75. Subsequently, plaintiff, in ignorance of this state of the accounts, sold his claim to defendants for half its face value, of which he received $24,007.50 in cash, the balance to be paid on collection of the claim. After the entry of the amount of plaintiff's claim in defendants' account with the Peruvian government, other entries were made therein, varying the balances, but the items then standing remained in the account, and no arrangement was shown for keeping them alive distinct from the general account. *Held*, that by charging the claim against the credit to the Peruvian government the latter was in legal effect paid by the mutual extinguishment of the credit and of so much of the claim, and under these circumstances the sale of the claim was not binding upon the plaintiff, but he was entitled to be paid the amount so collected, less the amount already paid him in cash.

J. Hampden Dougherty, for plaintiff.
Frederick R. Coudert, for defendants.

WHEELER, District Judge. The plaintiff appears to have had an undisputed claim of £19,800 sterling, equal to $96,030, against the government of Peru. The defendants were partners doing business

and having accounts with that government under the name of W. R. Grace & Co. The defendants, with others, were partners, also doing business and having accounts with that government, under the name of Grace Bros. & Co. The plaintiff transferred his claim for collection to W. R. Grace & Co., which was acknowledged by decree of the government to be directly due to them, and on April 9, 1893, was so entered upon their books as a charge against that government for that amount, and credited to the plaintiff by the name of Walter as a suspended account. As this account then stood there was, before these entries, a balance due to that government from W. R. Grace & Co. of $46,557.75, and after them a balance due from that government to W. R. Grace & Co. of $49,772.25. In 1886 the plaintiff, in ignorance of the state of these accounts, and supposing that nothing had been realized by the defendants from his account, sold it to them for one-half of its original amount, $48,015, one-half of which—$24,007.50—was to be and was then paid, and the other half of which, of the same amount, was to be paid when the claim should be collected, none of which has ever been paid. The bill, after alleging these with other things, in substance prays that the contract of sale of the claim be decreed to be void; that the credit to the Peruvian government, against which the claim was charged, less the amount paid to the plaintiff, be decreed to the plaintiff. In the answer—

"These defendants admit that in the year 1883, and long prior thereto, and prior to the fall of 1882, when the order or decree of the republic of Peru recognizing the claim of the complainant was delivered to these defendants, and prior to the date of said decree, to wit, the 30th day of November, 1880, these defendants had in their possession, under their control, sums exceeding the sum of $49,750, or thereabouts, belonging to said republic of Peru, being the net proceeds of nitrate sold by these defendants for account of said republic, and that they had said sum in their possession and under their control, and credited in the books of their firm at the city of New York, and the government of Peru, at the time aforesaid order or decree was delivered to them by the complainant; and they further aver that at the time there were large sums due them by the government of Peru, through their branch house at Lima, which sums were not yet entered on the books of the firm at New York. They further aver that on or about the 9th day of April, 1883, at or about which time the complainant caused to be perfected the order or decree hereinbefore mentioned by the addition of certain formalities which had theretofore been wanting, these defendants at once opened in their books of account a suspense account under the title of 'Suspense Account Walter,' 'Walter' being a cable name used by the complainant, to which account they credited the entire amount of the claims of the complainant, to wit, $96,030.00, and debited that amount to the account of the government of Peru. They deny that they ever placed to the credit of such suspense account the sum of $49,750 in the bill of complaint alleged."

The answer was traversed, and proofs have been taken, the defendant Flint having been improved as a witness by the plaintiff, and the defendants Grace not having testified at all. The principal question in the case is as to the effect of what had been done towards collecting this claim by the defendants up to the time when it was bought by them of the plaintiff. That neither the figures of $46,557.75 nor $49,772.25 or thereabouts were ever entered on the books of the defendants as received from or charged to the Peruvian government on account of this claim is quite clear; but that the first

of these sums, standing on the books as a credit to that government, was met by charging to that government the amount of this claim, is equally clear. The books seem to have so stood for about three years, and, although they have been changed since by adding other items coming from Grace Bros. & Co. varying the balances, these items appear to have stood there in the same places till now. They would be merged in the general balances following and extinguished unless there was some arrangement with the government for keeping them alive. Nothing of that kind is shown. The allegation in the answer that the plaintiff's claim has not been paid to them is understood to mean that, considering the items brought in from other sources, there has always been a balance their due. So much of the credit to the government as was met by the charge of this claim, which was all then directly due to the defendants, was in legal effect paid by the mutual extinguishment of the credit and of so much of the claim. The sale of the claim under these circumstances would not be binding upon the plaintiff. The defendants have offered to reassign the claim upon repayment to them of what they have paid the plaintiff for it. But they have not offered him what they have extinguished of it, nor can they, without the agreement of the government of Peru, restore it as it was. With the sale out of the way, the parties must stand upon the arrangement as it was before. The plaintiff would be entitled to what was collected, $46,557.75, less the commission, understood to have been 10 per cent., $4,655.77, and what was paid over to him, understood to have been $24,007.50. The balance is $17,894.48. Decree for plaintiff for $17,894.48.